## SAKER v MERCURIO

Ohio Appeals, 7th Dist, Mahoning Co

No 2326.   Decided Nov 13, 1936

Henderson, Wilson, Mason & Wyatt, Youngstown, for appellee.

T. E. Antonelli, Youngstown, for appellant.

**OPINION**

By CARTER, J.

This cause is in this court on appeal on questions of law. The appellee, plaintiff in the lower court, brought his action in the Court of Common Pleas of Mahoning County, alleging, in substance, that on or about the 25th day of June, 1934, the defendant falsely, maliciously and without any reasonable or probable cause, caused to be prosecuted against the plaintiff herein a criminal action for issuing a check with intent to defraud, and that as a direct and proximate result of such false and malicious prosecution he has suffered damages in the amount of five thousand dollars. To this petition an amended answer was filed by the defendant, wherein he alleges that the plaintiff, Joseph Saker, issued a check on or about the 27th day of August, 1930, drawn on the Warren State Bank of Warren, Ohio, in the sum of $90.00 payable to the order of cash, and the defendant became holder of it in the usual course of trade; that plaintiff had insufficient means to meet the check and that upon the presentment of the check to the payee bank it was returned marked "insufficient funds"; that on or about the 1st day of July, 1934, the defendant gave the check marked "insufficient funds," among other accounts, to an attorney for collection, and that if it should transpire that the plaintiff was arrested for issuing a check for insufficient funds. the same was done without any knowledge or authority from this defendant, and prays that the petition be dismissed. The cause came on for trial to a court and jury, resulting in a verdict of $1,000 in favor of the plaintiff. Motion for new trial filed, overruled and judgment rendered on the verdict, and appeal is prosecuted to this court to reverse this judgment and for final judgment for appellant.

The evidence discloses the following, that plaintiff issued a check on or about August 27th, 1930, for the amount of $90.00, drawn on the Warren State Bank, payable to the order of cash; that the defendant

became holder of it in the usual course of trade, having received the check for the sale of merchandise consisting of produce. The check, upon presentment to the drawee bank, was returned marked "insufficient funds"; that about the 1st day of June, 1934, the defendant gave the check, marked "insufficient funds," among other accounts, to Attorney Reuben Segall, of this city, for collection; that some time later Attorney Segall individually signed an affidavit for a state warrant for the arrest of the plaintiff, Joseph Saker, and that upon this affidavit being filed, on or about the 26th day of June, 1934, the plaintiff was taken into custody by the constable and taken before Martin Costello, a justice of the peace. The plaintiff was released on his own recognizance, and the next day discovered that he had issued another check on September 12, 1930, a short time after the issuance of the first check, payable to the order of cash, which was given to defendant in the place of the former check, and which check was placed among various checks sent to the bank for deposit. Upon discovery that a second check had been given, Attorney Segall dismissed the action and paid the court costs himself, and one of the questions presented to this court for consideration and determination is, can the defendant Mercurio be held to respond in damages in an action for malicious prosecution, when the affidavit for his arrest was not signed or filed by the defendant, but by the attorney for the defendant, to whom the defendant had delivered such check for collection with no express authority by the defendant to make such arrest, as the evidence is conclusive that the attorney had not been authorized to invoke the criminal statute? There is no evidence in the record that Mercurio ever authorized his attorney to institute a criminal proceeding for the purpose of collecting this check. There is no evidence in the record that the attorney had pursued such a course of conduct prior to the filing of the affidavit in question. There is no evidence in the record of ratification by Mercurio of the act in question or similar acts. The testimony of the attorney involved was to the effect that the criminal statute was invoked for the purpose of collecting the money and not because he desired to see Saker back of the bars.

In 2 Corpus Juris, page 633, paragraph 275, the author states:

"Unless there is an agreement to the contrary, an authority to collect will usually carry with it power to employ counsel, or appear as attorney, and bring suit to enforce payment, although the agent may resort only to such proceedings as are usual and legitimate for the purpose, including civil, and excluding criminal, proceedings."

The case of Equitable Life Assurance Society of United States v Lester, 110 SW 499, is a case somewhat similar to the case at bar, and the court in passing on the case presented used the following language:

"We are of opinion, however, after examination of the testimony, that Bourke's relation to appellant was not such as would warrant the finding that he had been clothed by appellant with such powers in connection with his duties as made him appellant's representative in the district with full discretion. This being so, the resort to a criminal prosecution to collect a debt arising from the notes cannot be said to have been the act of appellant, in the absence of proof that it was directed, authorized or acquiesced in by appellant, of which there is none. The act of an agent, whose duty it is to collect money due his principal, is authorized only by resort to such proceedings as are usual and legitimate for the purpose. Civil proceedings would be deemed such, but not the use of criminal process. This is not appropriate or justified in order to collect a debt. To charge the principal, in malicious prosecution, for such conduct on the part of the agent, the principal must have authorized or ratified it in some manner."

**Ohio Jurisprudence, Vol. 1, page 795, par. 99**, deals with the personal liability of an agent in general. The author therein states:

"An agent is personally liable on contracts made by him in the execution of his agency, containing no apt language to bind the principal, to which the agent signs his own name, even though he adds to that signature the term 'agent.' The contract must purport to be the act of, and to bind the principal."

As hereinbefore suggested, this affidavit was signed by the attorney individually. The same author, at page 100, further states:

"In accord with the rule laid down by Judge Story and the general prevailing rule the Supreme Court of Ohio has held an agent who undertakes to do an act without authority from the principal or who exceeds the authority delegated to him is per-

sonally responsible to the person with whom he is dealing, even when he acts bona fidely, believing he is invested with such authority, declaring that the courts of this country, with few exceptions, adhere to this doctrine. If he does not bind the principal because he has gone beyond the scope of his authority, he then binds himself. As aptly said, it is not in the liability itself but in the nature of the remedy that the courts have chiefly differed."

A perusal of this record satisfies this court that there was no authority granted, either express or implied, authorizing the attorney in this case to invoke this criminal statute, and that he did it on his own initiative and on his own responsibility, and that therefore the principal, Mercurio, can not be held to respond in damages for malicious prosecution based upon the arrest under this affidavit.

There is another matter we might call to the attention of counsel, and that is that it is not a proper procedure to invoke the criminal statutes for the purpose of collecting a civil obligation If such was unlawful, then the principal, Mercurio, in this case had no authority to delegate such an act to his agent. As expressed in Equitable Life Assurance Society of United States v Lester, supra, it is not a legitimate procedure to invoke a criminal statute to collect a civil obligation.

Motion was made for a directed verdict at the conclusion of plaintiff's evidence, which was overruled and exceptions noted. A like motion was made at the conclusion of all the evidence, which was overruled and exceptions noted. We are of opinion that these motions should have been sustained on the grounds that there was no right of recovery in favor of the plaintiff against Mercurio.

For the reasons above given cause reversed and this court coming to render the judgment which the Court of Common Pleas should have rendered at the conclusion of plaintiff's testimony, renders final judgment in favor of appellant.

ROBERTS and NICHOLS, JJ, concur.